[Civ. No. 5958.   Third Appellate District.—November 16, 1937.]

ELMER DAIGH et al., Petitioners, v. H. S. SHAFFER, Judge of the Superior Court, etc., Respondent.

Rae B. Carter for Petitioners.

Gilford G. Rowland, Claude Minard and Vernon M. Smith, as *Amici Curiae* on Behalf of Petitioners.

F. A. Silveira, District Attorney, for Respondent.

450

C. Ray Robinson, James D. Garibaldi and Willard B. Treadwell, as *Amici Curiae* on Behalf of Respondent.

Earl Warren, District Attorney (Alameda), Ralph E. Hoyt, Chief Assistant District Attorney, and Cecil Mosbacher, Deputy District Attorney, as *Amici Curiae* on Behalf of Respondent.

PLUMMER, J.—This cause is before us upon the application of the petitioners for a writ of prohibition to restrain the above-named respondent, as a judge of the Superior Court of the State of California, in and for the County of Merced, from proceeding with, or trying a certain action now pending in the Superior Court of the County of Merced, numbered 11,522, in which the Commercial Transfer, Incorporated, a corporation, and Elton C. Gorman are plaintiffs and the petitioners above named are defendants. Upon the filing of the petition a temporary restraining order was issued enjoining further action by the respondent in said cause until a further order of this court, and also an order to show cause why the respondent should not be permanently enjoined from acting as a judge of the superior court in the trial of said action, or taking further action therein.

The petition sets forth that upon the filing of the complaint in said action and the filing of the petitioners' answer thereto, Ray B. Carter, as attorney for the defendants, and attorney for the petitioners herein, filed in the office of the clerk of the county of Merced, as *ex officio* clerk of the Superior Court in and for the County of Merced, a written challenge to prevent the respondent from taking any further proceedings in action No. 11,522, pursuant to the provisions of section 170.5 of the Code of Civil Procedure. That section provides, among other things, ''that any party or his attorney to any cause or proceeding of any nature, pending in a Superior Court or Municipal Court, except the People or District Attorney in a criminal case, may make and file with the Clerk of the Court in which the action is pending, and serve on the opposite party, a peremptory challenge, in writing, of the judge assigned to try or hear the cause or pending matter. Thereupon, without any further act or proof, the presiding judge, in those counties where there is a presiding judge who assigns causes for hearing or trial, or the chairman of the

Judicial Council in other counties, shall assign some other judge to try the cause or hear the pending matter. . . . If it is necessary to secure a judge from another county, the chairman of the Judicial Council shall assign such judge.'' The section further provides that only one challenge may be allowed to each of the respective parties in the action or proceeding.

Nothing in the section, *supra,* relates to the disqualification of a judge on account of bias, prejudice or interest. No reason need be given. The barring of the judge to try the cause pending before him or in the court over which he presides is not based upon any grounds of disqualification named by the legislature, but rests wholly upon the arbitrary act of an attorney or party to the action. In other words, the challenged judge may possess all of the constitutional qualifications, be absolutely free from bias or prejudice, and yet, if the section is valid, be set aside according to the whim, caprice, antipathy or desire on the part of a party or his attorney to have substituted in the place of a challenged judge someone more to his personal liking, perhaps more learned or less learned in the law, that may be involved in the action, or for the undisclosed purpose that the challenged judge shall never try a case in which the challenging attorney appears. The power to remove the challenged judge is thus vested in the attorney or in the party he represents, and is without any legislative action designating grounds of disqualification.

Neither in the common law nor by statutes have we found any authority for barring a judge from the trial of a cause, except for a common law or statutory disqualification specifically named. Nothing is contained therein providing for arbitrary action by either a party to a cause or his attorney. In other words, the law specifies grounds constituting the disqualification of a judge, and neither courts nor attorneys may add thereto. In the article on ''Judges'' found in 33 C. J. beginning on page 988, the causes which disqualify a judge to act are set forth at length, and no arbitrary action appears to be allowed.

Has an attorney or a private citizen, for no common law or statutory reason whatsoever, by a mere challenge, power to bar a duly elected and qualified judge from trying a cause pending in the court over which he presides?

Section 23 of article VI of the Constitution sets forth the eligibility and qualification of judges, as follows, to wit: "No person shall be eligible to the office of a justice of the Supreme Court or of a District Court of Appeal, or of a judge of a Superior Court, or of a Municipal Court, unless he shall have been admitted to practice before the Supreme Court of the State for a period of at least five years immediately preceding his election or appointment to the office."

Section 6 of the same article is to the effect that there shall be at least one judge of the superior court in every organized county. Section 5 of article VI, *supra*, reads: "The Superior Court shall have original jurisdiction in all civil cases and proceedings, . . . in all criminal cases amounting to felony," etc. The section then goes on to provide for the exercise of certain appellate jurisdiction, of the right of the judge to issue certain special writs, and that the process of the court shall extend to all counties in the state.

Subdivision 6 of section 1–A of article VI of the Constitution relative to the powers of the chairman of the Judicial Council is in these words: "The chairman shall seek to expedite judicial business and to equal the work of judges, and shall provide for the assignment of any judge to another court of a like or higher jurisdiction to assist a court or judge whose calendar is congested, to act for a judge who is disqualified or unable to act or sit and hold court where a vacancy in the office of the judge has occurred." Here, the question arises, has the chairman of the Judicial Council authority to appoint or designate a judge to act in the place and stead of a judge who is constitutionally qualified to act, and against whom no disqualification can be urged? If not, then the provisions of section 170.5 are void for the reason that it gives to an attorney or a private citizen the right to restrain or prohibit the functioning of a coordinate branch of the state government. The section as it reads sets forth no legislative specification of disqualification; it simply provides, as we have said, for an arbitrary act on the part of an attorney or on the part of a private citizen appearing as a party in the action. If the chairman of the Judicial Council has power to act, the judge selected and designated by him to try the case may be challenged by the attorney for the opposite party, and the action of the chairman of the Judicial Council nullified.

The petitioners contend that the challenge of a judge is analogous to the peremptory challenging named in a venire calling a number of citizens who thereafter may be chosen to act as jurors. The analogy, however, is not complete. The challenge of a venireman must be taken before he is clothed with authority to act as a juror. When sworn in to try the case the right of peremptory challenge has ended. When a judge of the superior court, elected constitutionally, and by the laws of the state qualified to act, the right of challenge, if compared with the challenge of the juror, would likewise cease when each one is installed and regularly empowered to proceed with the trial.

In this proceeding the petitioners rely especially upon the case of *Sacramento & San Joaquin Drainage Dist.* v. *Rector,* 172 Cal. 385 [156 Pac. 506]. That case, however, when properly considered, is a complete answer negativing the petitioners' contention. We quote therefrom the following: "Considering the section as one 'regulating the practice in courts of justice', and hence as one coming under the constitutional mandate that the legislature 'shall not pass local or special laws' on that subject, we are met by respondent's objection that the classification of causes which may not be heard by judges of counties in which the subject matter of the litigation exists is not founded upon any natural, intrinsic, or constitutional distinction. And in the development of this objection it is specified by respondent that the act applies only to part of a class, in that judges are not disqualified from hearing causes involving properties in their respective counties belonging to irrigating districts, sanitary districts, protection districts, water districts, lighting districts, storm-water districts, and other public agencies. The rule undoubtedly is that any classification of the sort attempted in this statute must be founded upon some good reason and may not rest in the arbitrary will of the legislature, but it is also true that if good ground for the classification exists, such classification is not void because it does not embrace within it every other class which might be included." (Citing cases.)

The court in the above case had under review, among other questions, the third subdivision of section 25 of article IV of the Constitution, which prohibits special local or legislative acts regulating the practice of courts of justice, and con-

siders the disqualification there passed upon as being a regulation of the practice in courts of justice.

Before pointing out the special nature of section 170.5, *supra*, we call attention to section 21 of article I of the state Constitution, wherein it says: "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislature, nor shall any citizen or class of citizens be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

The first sentence of section 170.5, *supra*, violates the provisions of the Constitution which we have quoted. That sentence gives to an attorney appearing in a criminal case, the right to challenge the regularly elected and qualified judge, without setting forth any grounds of disqualification, and denies to the district attorney the same privilege.

Referring again to the case relied upon by the petitioners and requoting the language therein, to wit: "The rule undoubtedly is that any classification of the sort attempted in this statute must be founded upon some good reason and may not rest in the arbitrary whim of the legislature." If this granting of a privilege to the attorney on one side of a case, and denying the exercise of the same privilege of an attorney on the opposite side of the case is not purely arbitrary, we are unable to conceive of what would be an arbitrary distinction. There is no reason why the rights of the people are not equal to the rights of a defendant. Justice cannot be meted out unless the principle of equality is observed in all court proceedings.

While it may be contended that the court is a distinct entity and does not etymologically include the judge, yet if the court is considered simply as an idea, the judge elected and qualified to act therein is the exemplification of that idea in practice. Without the judge the court is inanimate and motionless; with the presence of the judge it is an active and going entity, and as stated by some of the text writers, the judge is likewise included in the idea of a court.

Again referring to the constitutional prohibition against granting of privileges to one and withholding them from another, we may quote the definition of "privilege" found in 5 California Jurisprudence, page 740, to wit: "A privilege is a particular and peculiar benefit or advantage enjoyed by a person, company or class beyond the common advantage

of other citizens." If we consider the case in its collective interpretation and excluding both the attorney for the defendant and the district attorney who represents the people, the section gives to the defendant an exclusive privilege which it denies to the people or to the state.

It is a maxim of constitutional law that the legislature cannot delegate to another body the power which has been delegated to it.

That the legislature has plenary power to prescribe the grounds which shall constitute the disqualification of a judge is undoubtedly the law, but that its power to delegate to a private citizen or to an attorney at law the right to determine that disqualification, based upon his or their own peculiar wishes, desires or antipathies, is an entirely different matter. The cases to which we have been cited setting forth the rule which we have just mentioned do not go to the extent that the legislature may abdicate its right to set forth the grounds of disqualification and transmute that right or privilege to a private citizen or his attorney.

The extent to which the challenge provided for in section 170.5, *supra*, may be carried shows that it is beyond any constitutional authority. Thus, in counties having but one judge and a limited number of attorneys one at least of the attorneys of the county appearing therein might by concerted action of the attorney appearing with other attorneys who would probably appear in other actions, bar a regularly elected and constitutionally qualified judge of the superior court from ever trying a case during his entire term of office.

The Constitution provides the method by which the legislature may remove a judicial officer, and that is the limit both of the power and method by which a judicial officer may be removed from office. The possible preventing of a judge of the superior court, in counties having but one judge, from ever trying a case therein, would indirectly remove him from exercising the powers and duties of his office which the people have, by their votes, empowered him to perform.

We think the language found in 14 California Jurisprudence, page 795, is applicable here: "As is pointed out in another article, the Judiciary is an independent department of the State Government, and the Constitution shows a wise and peculiar solicitude to secure its independence."

Notwithstanding what we have said that we have found no authority either in the statutes of the several states or the decisions of the courts therein, supporting the contention that a mere challenge is sufficient to bar an otherwise qualified judge from acting in a particular case, it is contended by the petitioners and *amicus curiae* that a large number of other states have upheld statutes similar to the provisions of section 170.5, *supra,* and cite as a leading case supporting such statement *U'Ren* v. *Bagley,* 118 Or. 77 [245 Pac. 1074, 46 A. L. R. 1173]. The contention made by the petitioners and the friends of the court is just as strongly controverted by the respondents. That the case relied upon as showing that statutes in other states similar to section 170.5, *supra,* are not at all similar to said section, and that the contention that there is a similarity has no foundation, is clearly shown by an examination of the different laws and code provisions and should have been apparent to the friends of the court.

Section 170.5, *supra,* set forth herein in full provides only for the filing by an attorney, or a party, with the clerk of the court, a simple challenge setting forth the title of the action and that the party or his attorney challenges peremptorily the judge to whom the case has been assigned for trial. No affidavit is required, no cause for challenge and applies equally to a qualified judge who is absolutely unprejudiced, unbiased and has no pecuniary interest nor is connected in any way by marriage or blood as a relative of any party engaged in the action.

We unhesitatingly state from an examination of all the authorities cited by the petitioners and the friends of the court that there can be found in no other state a statute or code section which is so widesweeping or absolutely barren of any legal statement of a cause to bar a judge from hearing a cause, whether qualified or unqualified, as section 170.5, *supra.*

We turn now to the opinion in the case of *U'Ren* v. *Bagley, supra,* where the Oregon laws are quoted, and in which case we find the opinion stating that a certain number of other states have similar statutes, all of which we have examined and find the statement of the court substantially correct. We may further add, the opinion in the U'Ren case appears to be the basis for the contention that the statutes referred to in other states are similar to our own code provision.

Sections 45–1, 45–2 of the Oregon Laws, as amended in 1925, read as follows:

"Section 45–1. Judge Prejudiced Not to Try Any Suit or Action; Presiding Judge or Chief Justice to Call in Another Judge or Change Venue.—No judge of a Circuit Court of the State of Oregon shall sit to hear or try any suit, action or proceeding when it shall be established, as hereinafter provided, that such judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. In such case the presiding judge shall forthwith transfer the suit or action to another department of the same court, or call in a judge from some other court, or apply to the chief justice of (the) supreme court to send a judge to try the case; or, if the conveniences of witnesses or the ends of justice will not be interfered with by such course, and the action or suit is of such a character that a change of venue thereof may be ordered, he may send the case for trial to the most convenient court.

"Section 45–2. Party or Attorney May File Affidavit of Prejudice.—Any party to, or any attorney appearing in any action, suit or proceeding in a circuit court may establish such prejudice by motion supported by affidavit that the judge before whom the action or suit is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge. And that it is made in good faith and not for the purpose of delay, and shall be filed with such motion at any time prior thereto or within one day after such action, suit or proceeding is at issue upon a question of fact, or such further time as the court may allow, and not otherwise, except that in judicial districts having a population of 100,000 or more, the affidavit and motion for change of judges shall be made at the time and in the manner prescribed in Section 45–3, Oregon Laws."

It will be perceived that the sections of the Oregon laws provide not only the procedure that shall be followed but also what shall constitute sufficient evidence to bar a judge from the trial of an action. The question of prejudice is established in a certain manner, and then, what shall be contained in the affidavit is likewise specified. Not only a question of procedure, but a question of sufficiency of the evidence of the bias or prejudice of the judge forms a part

of the substance of the two sections, and constitutes a sufficiency of what we may call a trifle more than a scintilla of evidence supporting the charge. There is absolutely nothing in section 170.5, *supra,* conformable to either one of the two sections of the Oregon laws, save and except that they are both intended to bar a judge from presiding at the trial of a particular case. The motion and the affidavit mentioned in the Oregon laws must show good faith, and that the action is taken not for the purposes of delay. Good faith is not required by section 170.5, *supra.*

Even in the U'Ren case it appears that the opinion was by a divided court. The petitioner and friends quote from the opinion in the U'Ren case the following: ''No judge has a vested right to sit in any particular case; neither has the litigant nor an attorney a vested right to have any case heard by any particular judge.'' That does not appear to us to be a full or logical determination of the questions involved. It is correct so far as it states that no litigant nor an attorney has a vested right to have his cause heard by any particular judge, but there should be added, no attorney nor litigant has a vested right to object to a judge elected by the people, qualified as provided by law, and against whom no intimation of prejudice, bias, pecuniary interest or relationship exists tending to prevent a fair trial. That is the interest of the public. The public, as a third party, has gone to the expense of electing a qualified judge to hear and determine every case which arises within the jurisdiction of the court over which such judge is elected to preside, and no party has a vested right to add to the expense of the public by interposing a challenge, where no cause therefor exists, as he has no vested right to have his cause heard by any particular judge, and if the judge provided by the public who pays his expenses is qualified, as we have said, all the rights of the parties to the action have been fully and completely provided for. We have already shown that the challenge to an unaccepted juror bears no relation to the challenge of a court.

That the statement in the U'Ren case that the Oregon laws are similar to those of other states and are not in any wise similar to section 170.5, *supra,* we cite, first, the case of *Conkling* v. *Crosby,* 29 Ariz. 60 [239 Pac. 506], decided by the Supreme Court of Arizona. Paragraph 500, Revised

Statutes Arizona, 1913, containing among other things, the following: "If either party to a civil action brought in any superior court shall file an affidavit alleging either:" (Omitting specifications 1, 2 and 3) "4. That the affiant has cause to believe, and does believe that on account of the bias or prejudice or interest of said judge, he cannot obtain a fair and impartial trial. It shall be the duty of said judge to at once request the judge of the superior court of some other county, to hold the Superior Court in the county where such action is pending," etc.

In *State* v. *Fifth Judicial Dist.*, 53 Nev. 444 [5 Pac. (2d) 555], the opinion of the Supreme Court of Nevada rests upon an act of the legislature containing the following words: "If either party to a civil action in the District Court, or his, or its attorney or agent, shall file an affidavit alleging that the affiant has cause to believe, and does believe that on account of the bias or prejudice or interest of said judge he cannot obtain a fair and impartial trial," etc., another judge shall be called in.

In *State* v. *Armijo*, 38 N. M. 73 [28 Pac. (2d) 511], the decision of the Supreme Court of the state of New Mexico rested upon a statutory provision reading as follows: "Section 1. Whenever a party to an action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard cannot, according to the belief of the party to said cause making such affidavit, preside over the same with impartiality, such judge shall proceed no further," etc. These references show absolute want of any basis for the contention that any of the states referred to have statute or code provisions similar to section 170.5, *supra*.

It is further contended that the Supreme Court of the United States, in *Berger* v. *United States*, 255 U. S. 22 [41 Sup. Ct. 230, 65 L. Ed. 481], supports the validity of our code provision. This contention, however, is likewise unsound. The section of the Judicial Code involved in that action reads: "Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard, has a personal bias or prejudice, either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be desig-

nated in the manner prescribed in the last preceding section,''
etc. While the decision is by a divided court, it is to the
effect that when an affidavit is filed alleging bias or prejudice,
the power of the presiding judge is terminated, and another
judge shall be called in; that is, there must be some evidence
showing disqualification, all of which is wanting in section
170.5, *supra*.

All the cases having to do with the disqualification of
judges require an affidavit, and the affidavit must state that
the affiant has reason to believe that he cannot have a fair
and impartial trial. The conflict between the courts rests
not upon the necessity of such an affidavit, but upon the
sufficiency and conclusiveness of an affidavit alleging bias
or prejudice. This conflict is clearly described in 33 C. J.,
page 1015, to wit: ''There is a conflict of authority as to the
sufficiency and conclusiveness of an affidavit alleging bias or
prejudice, due largely to lack of uniformity in the various
constitutional and statutory provisions. In some jurisdictions
an affidavit alleging bias or prejudice is sufficient if made in
the language of the statute, and the facts showing actual bias
or prejudice are not required, and, in some cases, not per-
mitted, to be alleged; hence, the affidavit is considered conclu-
sive, the truth of the affidavit filed being not what disqualifies
the judge, but the affidavit itself; and there is no discretion
to refuse it. In other jurisdictions while differing as to the
conclusiveness of the affidavit, it is required that it shall
set forth the facts showing bias or prejudice, not mere con-
clusions; and it is insufficient even in the language of the
statute. The facts as stated must be of a character that will
show, not only that the bias or prejudice exists, but that it
is of a character calculated to impair the judge's impar-
tiality and to sway his judgment. In these latter jurisdictions
there is a conflict as to the conclusiveness of the affidavit if
it sufficiently sets forth the facts constituting the bias or
prejudice. In some of them it is held that such an affidavit
is conclusive; but in others, it is held that it is not conclusive
and that counter-affidavits may be filed and the truth of the
facts made an issue.''

Irrespective of the procedure which may be followed by
different courts as set forth in the above quotation from
C. J., the necessity for filing an affidavit as contended for
by the respondents, is universally upheld, and also that the

affidavit must set forth specific causes, or a specific cause; and being under oath, constitutes at least some evidence of the truthfulness of the affidavit and the good faith of the affiant.

Many cases are cited in the brief of *amici curiae* in support of the petitioners' contention, but they do not reach the vital points involved in this action, and, therefore, require no citation or analysis in the decision of the cause before us. One suggestion, however, is made in the brief of *amici curiae* for the petitioners which may be mentioned at this point, and that is, that if the court considers the section in so far as it limits the powers of the district attorney to file a challenge, that portion of section 170.5, *supra,* may be read out of the section. The limiting part as to the district attorney is a part of the same sentence which grants the right to challenge to other parties, which, of course, absolutely prevents our reading out of the sentence a portion thereof, and coming to the conclusion that the legislature would have passed any portion of the section unless it included the whole sentence.

On the part of the respondents it is contended that section 170.5, *supra,* violates section 1 of article III of the state Constitution. That section provides that the powers of the government of the state of California shall be divided into three separate departments—the legislative, executive and judicial; and no person shall be charged with the exercise of powers properly belonging to one of these departments or shall exercise any functions appertaining to the others, except as in this Constitution expressly directed or permitted.

The section of the code under consideration does not expressly authorize anyone exercising functions, either executive or legislative, to interfere with the functions of the courts, but as we have heretofore pointed out, the only action of the legislature has been to abrogate any such function, if it has, and delegate that authority to a private individual who, without reason and arbitrarily might, by a few words, disrupt the ordinary functions of one of the coordinate branches of the state government.

Respondents further contend that section 170.5, *supra,* violates section 1 of article VI of the Constitution, which provides for the vesting of the judicial power in the Senate, sitting as a court of impeachment, in the Supreme Court, District Courts of Appeal, superior courts, and other inferior

courts. There seems to be some divergence of opinion as to whether objections raised by a litigant as to the bias, prejudice, etc., of a court is the exercise of a judicial function. Admit, for the purposes of this decision, that the filing of a barren affidavit such as section 170.5, *supra,* allows, is not an exercise of any judicial function, it is, as we have stated, a delegated power and a manifest interference with the right of the duly elected, qualified and unbiased presiding judge to proceed with the due exercise of judicial functions.

The contention of the respondents that the section is further violative of section 11 of article I of the Constitution, and also section 25 of article IV, *supra,* has already been considered and found well taken.

It further appears from the record before us that section 170.5, *supra,* is not a general law, as it does not equally apply to litigants in different courts exercising exactly the same jurisdiction, to wit: In a justice's court having jurisdiction of a civil matter of the value of $1,000, no such challenge is allowable, while in a municipal court where the matter involved is of the value of just $1,000, such a challenge is allowable.

We wish again to revert to the section under consideration in so far as it disallows the district attorney to exercise a challenge which is granted to a defendant in a criminal action and adopt the language found in the brief of *amicus curiae* on behalf of the respondents, whereas the state may or may not be considered a person under the fourteenth amendment to the federal Constitution, providing "that no State shall pass any law denying to any person within its jurisdiction equal protection of the laws, there can be no doubt that the uniform operation of the law would require that it apply to the State and the District Attorney in the same manner that it applies to other litigants". (Citing the case of *State* v. *Brown,* 8 Okl. Cr. 40 [126 Pac. 245, Ann. Cas. 1914C, 394], in which the doctrine just stated is upheld.)

Many other cases are cited in the learned brief of *amicus curiae* supporting the contention of the respondents, that section 170.5, *supra,* is ineffective, but we think from what we have said that citation of further cases and their analysis, and the setting forth of all the reasons cited by counsel as to why the section under consideration should be held void, would only unnecessarily lengthen this opinion. We will

state, however, that all the points suggested have been carefully considered.

It seems clear to us that if the foregoing does not show that the empowering upon attorneys and litigants of arbitrary action, does not militate not only against the independence of the judiciary as a coordinate branch of the government, and also tend to obstruct the orderly administration of justice, we cannot very readily conceive of how such result could be more effectually attained. The rights of all of the parties and of the public as well must be considered instead of simply the arbitrary action of the attorney or litigant who seeks to remove a qualified judge from hearing a particular case. The contention of the respondents is unquestionable that the statute in effect, and the reasonable intent thereof, gives the litigant the power not to have a disqualified judge act, as provided in section 170.5 of the Code of Civil Procedure, but to enable a litigant to set aside a qualified, unbiased and unprejudiced judge at his own pleasure. That the legislature may designate causes which, if established in the manner by it provided, shall work a disqualification of a judge, is an entirely different matter from empowering a private citizen, though a litigant, simply by his act, to bar the exercise of judicial functions by a qualified judge. One relates simply to facts and the other to an act, not necessarily or even inferentially, based upon any facts; just simply an act.

Finding no support within reason, or in any decided case, having such a sweeping code provision, nor in any constitutional section, but, on the contrary, that section 170.5, *supra,* is in conflict with several sections of the state Constitution, it must be held that section 170.5, *supra,* is absolutely void.

The petition for a writ of prohibition is denied; the temporary restraining order heretofore issued herein is vacated and set aside; and the proceedings dismissed.

Pullen, P. J., and Thompson, J., concurred.